IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| STEVEN WILLIAM FERRELL, SR., *Plaintiff,* | CASE NO. 6:12-cv-00048 |
| v. | MEMORANDUM OPINION |
| BABCOCK & WILCOX, CO., ET AL., *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff Steven William Ferrell, Sr. ("Plaintiff") filed this action against The Babcock & Wilcox Company ("B&W") and six of its employees (the "Individual Defendants") alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*[1] I dismissed the claims against the Individual Defendants because the ADEA does not impose liability on individual supervisors for ADEA violations that relate to "personnel decisions of a plainly delegable character." *Ferrell v. Babcock & Wilcox Co.*, No. 6:12-cv-00048, 2013 WL 557197, at *2 (W.D. Va. Feb. 13, 2013) (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir. 1994)). B&W has moved for summary judgment. For the following reasons, I will grant B&W's motion.

I. BACKGROUND

Plaintiff is a former B&W employee who worked at a facility located in Lynchburg, Virginia. He began working for B&W in 1975, and from 2007 through 2011 he was assigned to

---

[1] Plaintiff stated in his Complaint that he also brought his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, but all of his allegations relate to age discrimination, which is not covered by Title VII. He does not allege or present any evidence that he was discriminated against on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Thus, I only consider his claims under the ADEA.

provide IT services to B&W's Nuclear Operations Group. Specifically, he worked on the Help Desk team in the role of Media Center Operator. Plaintiff alleges that on multiple occasions in 2010, he was treated less favorably than younger employees with respect to his work schedule and vacation time. In March 2010, Plaintiff requested a shift change that would allow him to take Mondays off and work longer hours the rest of the week. Plaintiff alleges that his supervisor denied his request even though a younger employee had previously been allowed to take Mondays off. Plaintiff states that he took his complaints about the alleged age discrimination "up the chain of command," ultimately telling a senior human resources specialist that the denial of his requested shift change constituted "PURE DISCRIMINATION." In May 2010, Plaintiff asked again about taking Mondays off, and his supervisor denied this request as well, allegedly in retaliation for Plaintiff complaining about discrimination.

In September 2010, Plaintiff requested time off for Christmas, but his supervisor delayed making a decision until early December, when he denied Plaintiff's vacation request. The supervisor stated that he denied the request because Plaintiff had not accrued enough vacation time for the number of days off requested. Plaintiff needed to work one more hour to accumulate the required amount; he did so, and his supervisor then granted his request. Plaintiff also alleges that his supervisor threw papers at him, that he was excluded from meetings, and that B&W declined to pay for training classes for him even though the company did pay for other employees to take such classes. Finally, on March 8, 2011, B&W laid off Plaintiff, who was 57 years old at the time. Following his layoff, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission office in Richmond, Virginia, on March 21, 2011, and the EEOC issued a right-to-sue letter on June 20, 2012. Plaintiff filed this action on September 20, 2012, alleging age discrimination, retaliation, and a hostile work environment.

Eight days before a scheduled hearing on B&W's summary judgment motion, Plaintiff filed a motion to compel in which he requested that the Court order B&W to respond to a Request for Documents in which Plaintiff asked for:

> All correspondence, reports, recordings, pictures, photographs, notes, videotapes, or memoranda, including all electronically stored information, created or produced by any possible witness in this matter, including the Plaintiff in your possession which in any way relates to any of the circumstances, allegations, assertions, and/or claims alleged in the Complaint.

Plaintiff stated that this request encompasses emails he sent that pertain to his scheduling request and request for vacations. B&W opposed Plaintiff's motion, and both parties presented argument on it at the summary judgment hearing. At the hearing, I ordered B&W's counsel to have a representative of the company search for email records mentioned by Plaintiff and file an affidavit regarding the results of the search. B&W filed such an affidavit on June 20, 2013. In the affidavit, a B&W representative described the company's document retention policy, the steps taken to preserve documents related to this case and provide them to Plaintiff, and the results of a final search of the classified network undertaken after the summary judgment hearing. The B&W representative stated that the most recent search did not turn up any documents that relate in any way to this claim that had not already been produced to Plaintiff.[2]

## II. LEGAL STANDARD

Summary judgment under Rule 56 should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[2] Nearly a month after B&W filed the affidavit in response to the Court's order at the summary judgment hearing, Plaintiff filed a "reply" to the affidavit, in which he disputed the company's characterization of its document retention policy and claimed that the company's mail servers "could contain the documents supporting the Plaintiff in this matter." Although Plaintiff states that he spoke with B&W employees who can confirm his claims, he has not provided their names, let alone any declarations, affidavits or other admissible evidence that even remotely support his assertions. Nor has he indicated how any documents that B&W allegedly did not produce would support his claims. I will therefore grant B&W's motion to strike Plaintiff's response to the affidavit.

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine issues for trial. *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993); s*ee also Cheatle v. United States*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III. DISCUSSION

Plaintiff's allegations of discrimination fall into three categories: 1) disparate treatment based on the denial of his requests for a shift change and his termination from B&W; 2) retaliation for complaining about alleged discrimination to a B&W employee who served as Senior HR Specialist and EEO employee; and 3) a hostile work environment claim based on various conditions or incidents, some of which also serve as the basis for his retaliation allegations. I will discuss each category of allegations in turn.

### A. Disparate Treatment

Under the ADEA, it is unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In the absence of direct or circumstantial evidence of age discrimination sufficient to warrant a "mixed motive" analysis, courts apply the *McDonnell Douglas* burden shifting framework. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* While the precise formulation of the requirements of a prima facie case vary depending on the nature of the claim, *see Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000), in general a plaintiff must prove four elements: "(1) plaintiff is in a protected class; (2) an adverse employment action was taken against plaintiff; (3) plaintiff was performing [his] job at a level that met the employer's expectations; and (4) plaintiff's employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination." *DeBord v. Washington Cnty. Sch. Bd.*, 340 F. Supp. 2d 710, 713 (W.D. Va. 2004) (citing *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002)). I conclude that Plaintiff has failed to make out a prima facie case

with respect to either the denial of his request for a shift change or his termination as part of B&W's reduction in force.

### 1. Plaintiff's Request for a Shift Change

As an initial matter, B&W contends that the denial of Plaintiff's request for a shift change is not actionable because it is time-barred under the ADEA's statute of limitations. "[T]he ADEA require[s] a Virginia plaintiff—as a prerequisite to filing suit—to file an EEOC charge within 300 days of the unlawful employment decision." *Babus v. M/A-COM Private Radio Sys., Inc.*, No. 6:06cv00048, 2007 WL 2288021, at *3 (W.D. Va. Aug. 7, 2007); *see also* 29 U.S.C. § 626(d). Since Plaintiff filed a charge of discrimination on March 21, 2011, any acts of discrimination that took place before May 25, 2010, are time-barred. The initial denial of Plaintiff's request for a shift change took place in March or April of 2010, more than 300 days before Plaintiff filed a charge of discrimination with the EEOC. However, Plaintiff also alleges that he was not permitted to take Mondays off in May 2010, so it is possible that claims relating to that denial are timely, but Plaintiff has not specified exactly when he made his request.

Even assuming Plaintiff's complaints about the shift change were timely, I find that he has failed to make out a prima facie case because the denial of the shift change request does not constitute an adverse employment action. "An adverse employment action under the ADEA results from an employer materially altering the terms, conditions, or benefits of employment." *Griffith v. Wal-Mart Stores East, L.P.*, No. 6:12-cv-00011, 2012 WL 5465501, at *9 (W.D. Va. Aug. 24, 2012) (citing *Burgoon v. Potter*, 369 F. Supp. 2d 789, 797 (E.D. Va. 2005)). "An inquiry into the adverse nature of an employer's action ordinarily focuses on whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or decreased opportunities for promotion." *Burgoon*, F. Supp. 2d at

797 (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Thus, actions such as reassignment to a new position do not constitute an adverse employment action. *See Boone*, 178 F.3d at 256 (addressing the Title VII context); *Peary v. Goss*, 365 F. Supp. 2d 713, 722–23 (E.D. Va. 2005) (applying *Boone* in the ADEA context). Similarly, denial of a shift change request, particularly one that would permit an employee to take one day off per week, does not affect the terms or conditions of an employee's employment; rather, it simply maintains the status quo. I conclude that the denial of Plaintiff's shift change request is not an adverse employment action.

### 2. Plaintiff's Termination

Plaintiff stated in his deposition that he did not believe he was laid off because of his age. Ferrell Dep. 128:1–5, Apr. 11, 2013. This admission alone is enough to grant summary judgment in B&W's favor. But even had Plaintiff not made this admission, he cannot make out a prima facie case of discrimination. The Fourth Circuit has held that to establish a prima facie case "in the context of a reduction in force where performance was the announced criterion for selection," which is the case here, a plaintiff must show that:

> (1) the employee was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.

*Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429–30 (4th Cir. 2000) (quoting *Mitchell*, 12 F.3d at 1315); *see also Burke v. Rochester Corp.*, No. 3:04CV00037, 2005 WL 2372163, at *4 (W.D. Va. Sept. 23, 2005), *aff'd*, 184 F. App'x 309 (4th Cir. 2006). Plaintiff has failed to establish either the third or fourth element of the prima facie case.

With respect to the third element, the evidence shows that Plaintiff was not performing at a level substantially equivalent to the lowest level of those of the group retained. According to a

7

"Layoff Comparison Form" dated March 1, 2011, Plaintiff was "consistently the lowest performer in the unit and the least flexible resource within his peer group." Def.'s Mot. Summ. J. Ex. M. His performance evaluations for the previous two years were the lowest of the five employees in his peer group. *Id.* In an email exchange about whom to select for layoffs, the IT Site Manager wrote that the second lowest performing candidate (who was also laid off) was "still in a category well above" Plaintiff. Def.'s Mot. Summ. J. Ex. R. B&W also provided an affidavit from Plaintiff's direct supervisor, who stated that Plaintiff "lacked the proficiencies of his co-workers and the skill sets he had were skills everyone else in the Help Desk also had." Def.'s Mot. Summ. J. Ex. C. Although Plaintiff disagrees with B&W's characterization of his abilities and job performance, in considering assessments of an employee's performance, "'it is the perception of the decisionmaker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.3d 1062, 1067 (4th Cir. 1980); *see also Hill v. Augusta Cnty. Sch. Bd.*, 636 F. Supp. 2d 492, 495 (W.D. Va. 2009).

With respect to the fourth element, Plaintiff has not shown that the company retained individuals who were substantially younger than he was who were performing at a lower level than he was. Given that the evidence shows that Plaintiff was the lowest-performing member of his peer group is correct, logically Plaintiff cannot satisfy this element. In any event, only one individual retained on the Help Desk team after the layoffs was younger than Plaintiff. Wendy Brooks was thirty-seven years old at the time of the layoffs, making her both substantially younger than Plaintiff and outside of the class protected by the ADEA. The same Layoff Comparison Form mentioned above shows that Brooks was performing better than Plaintiff. Her job performance evaluations for the two years prior to the layoffs were both better than

8

Plaintiff's, *see* Def.'s Mot. Summ. J. Ex. M, and her supervisor stated in an affidavit that one of the reasons Brooks was not laid off was that she "took every opportunity to improve herself and increase her value to the company, and volunteered for leadership roles on several projects." Def.'s Mot. Summ. J. Ex. C. By contrast, that same supervisor stated that "unlike other employees in [the supervisor's] unit, [Plaintiff] worked only his set schedule and preferred to remain in his niche, attending only to the very specific tasks with which he was comfortable instead of taking on new responsibilities and expanding his skill set." *Id.* In sum, the evidence conclusively shows that B&W did not retain any employees younger than Plaintiff who were performing at a level lower than he was. I find that Plaintiff has failed to make out a prima facie case that his termination resulted from age discrimination.

### B. Retaliation

Plaintiff also alleges in his Complaint that B&W unlawfully retaliated against him for engaging in activity protected by the ADEA. According to Plaintiff, after he reported to an HR manager that the denial of his shift change request was "pure discrimination," Plaintiff's direct supervisor retaliated by refusing to grant Plaintiff's second request to take Mondays off, delaying approval of a request for vacation time, throwing papers at him, giving other employees higher job performance evaluation scores, and selecting Plaintiff to be laid off. The ADEA makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal connection existed

9

between the protected activity and the adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998); *Kerney v. Mountain States Health Alliance*, 894 F. Supp. 2d 776, 782 (W.D. Va. 2012).

Assuming without deciding that Plaintiff's complaint to the HR manager constituted protected activity, I find that Plaintiff has failed to produce any evidence that shows a causal connection between the protected activity and the allegedly adverse actions taken against him.[3] Under the ADEA, Plaintiff must show that B&W took adverse action against him *because* he engaged in protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). As discussed above, the evidence presented by the parties conclusively shows that Plaintiff was laid off for the legitimate, non-discriminatory reason that he was performing at a level lower than the others in his peer group. Just as Plaintiff has not presented any evidence that he was laid off because of his age, he has also not presented any evidence that he was laid because he complained about discrimination.

Nor has Plaintiff presented any evidence that his vacation request was denied in retaliation for his complaint about "pure discrimination." Rather, the record shows that the vacation request was initially denied because Plaintiff had not accumulated enough hours to earn the number of days off he desired; once he worked the extra hour that was necessary, his request was approved. Finally, although Plaintiff claims other employees received better performance evaluations than he did because of retaliation, he has not presented any evidence that supports his

---

[3] B&W does not and cannot dispute that a layoff constitutes adverse action. For the purposes of this discussion, I will assume that the denial of vacation benefits also constitutes adverse action, since it would materially alter the terms and conditions of employment in such a way that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). However, I find that Plaintiff's allegations that his supervisor threw papers at him, even if true, do not rise to the level of an adverse employment action. *See White*, 548 U.S. at 68 (finding that the purpose of the anti-retaliation provision in the ADEA is to prevent employers from engaging in actions that are likely to deter employees from reporting discrimination, and "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence").

claims or that contradicts the evidence presented by B&W. Because Plaintiff has not presented any evidence showing a causal connection between protected activity and adverse employment actions against him, I conclude that Plaintiff has failed to make out a prima facie case of retaliation.

### C. Hostile Work Environment

Plaintiff states in his Complaint that taken together, the incidents described above created a hostile work environment. The Fourth Circuit has consistently "assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." *Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999); *Causey v. Balog,* 162 F.3d 795, 801 n.2 (4th Cir. 1998). To prevail on a hostile work environment claim, a plaintiff must prove four elements: "(1) he experienced unwelcome harassment; (2) the harassment was based on his . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Baqir*, 434 F.3d at 745–46. Even assuming that Plaintiff experienced unwelcome harassment, there is nothing in the record that would permit a reasonable finder of fact to conclude that any such harassment was based on age or that it was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. In fact, Plaintiff has not presented any evidence at all that would support his claims. Accordingly, I conclude that B&W is entitled to summary judgment as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, I will grant B&W's motion for summary judgment. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Plaintiff and all counsel of record.

Entered this ___19th___ day of August, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE